UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BMO HARRIS BANK N.A., | Case No. 2:19-cv-02436-DAD-JDP |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS THAT PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT BE GRANTED |
| v. | |
| GREENWAY TRANSPORT, INC., *et al.*, | ECF No. 37 |
| Defendants. | OBJECTIONS DUE WITHIN FOURTEEN DAYS |

Plaintiff commenced this breach of contract action, alleging that defendants breached six loan agreements under which plaintiff financed defendants' purchase of certain tractors and trailers. Defendants have neither answered the complaint nor otherwise appeared. Plaintiff has filed a renewed motion for default judgment, which was before the court for hearing on July 28, 2022. I find that plaintiff is entitled to default judgment, but that plaintiff has not demonstrated entitlement to the requested fees and costs. Accordingly, I recommend that default judgment be entered against defendants and that plaintiff's requests for attorneys' fees and costs be denied without prejudice.

**Background**

According to the complaint, from December 2014 through July 2015, non-party GE Capital Commercial, Inc. ("GECCI") and defendant Greenway Transport, Inc. ("Greenway")

1

entered into five loan and security agreements, whereby GECCI agreed to finance Greenway's purchase of equipment and Greenway agreed to repay the loaned amount, plus interest, in monthly installments. ECF No. 1 ¶¶ 13-17, Exs. A-E.  On September 29, 2015, Greenway entered into a sixth loan and security agreement, this time with non-party General Electric Capital Corporation ("GECC"), whereby GECC financed the purchase of additional equipment in exchange for Greenway's agreement to repay the loan, plus interest, in monthly installments. *Id*. ¶ 18, Ex. F.  Under each agreement, the lender—GECCI for the first five agreements and GECC for the remaining agreement—was granted a first-priority security interest in the equipment Greenway purchased with each loan. *Id*. at 4-5.  To induce GECCI and GECC to enter into the loan agreements, defendant Ajaypal Dhaliwal personally guaranteed the performance of all Greenway's present and future liability to GECCI and GECC and their successors in interest. *Id*. ¶ 22, Ex. H.  In October and December 2015, the rights and interests in each of the agreements were assigned to plaintiff. *Id*. ¶¶ 23-25.

Plaintiff alleges that as of early July 2019, defendants are in default under the loan and guarantee agreements. *Id*. ¶¶ 28-29.  Plaintiff notified defendants of their defaults and demanded repayment of the amounts due and surrender of the collateral. *Id*. ¶ 30.  On November 4, 2019, plaintiff elected, pursuant to the terms of the loan agreements, to accelerate the balance due under each agreement, thereby requiring defendants to immediately satisfy the outstanding balance, including late fees. *Id*. ¶¶ 31, 51.  Upon the agreements, defendants are required to pay interest on all unpaid amounts at a default rate of eighteen percent per annum. *Id*. ¶ 32.  Plaintiff alleges that as of November 4, 2019, the principal due under all six agreements totaled $312,488.95, plus interest totaling $17,738.04. *Id*. ¶ 37-39.

Plaintiff commenced this action on December 5, 2019, purporting to allege claims against defendants for breach of contract, injunctive relief, specific performance, and replevin.[1]  *Id*. at 9-13.  Nearly a year and half later, plaintiff requested and obtained entry of defendants' default.

---

[1] The complaint contains five counts, with counts one and five asserting breach of contract claims against Greenway and Dhaliwal respectively.  The remaining counts seek injunctive relief, specific performance, and replevin, which are contractual remedies and not independent claims.

ECF Nos. 17, 18, & 19. In August 2021, plaintiff moved for default judgment against both defendants. ECF No. 20. That motion was denied without prejudice, and defendants' default was vacated, because plaintiff had not established that defendants had been properly served. ECF No. 24. Plaintiff subsequently filed proofs of service reflecting that it served defendants, by way of substitute service, with a copy of the summons and complaint on December 10, 2021. ECF Nos. 27, 28, & 32; *see* Cal. Civ. P. Code § 415.20. After defendants failed to timely answer the complaint, plaintiff again requested the entry of their default, ECF No. 31, which the Clerk of Court entered on April 4, 2022, ECF No. 33. Plaintiff now moves again for default judgment against defendants.

## Legal Standard

Under Federal Rule of Civil Procedure 55, default may be entered against a party who fails to plead or otherwise defend against an action. *See* Fed. R. Civ. P. 55(a). However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986)). Rather, the decision to grant or deny a motion for default judgment is discretionary. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In exercising that discretion, the court considers the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning the material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). "In applying this discretionary standard, default judgments are more often granted than denied." *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003) (quoting *PepsiCo, Inc. v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999)).

Generally, once default is entered "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th

3

Cir. 1977)).  However, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."  *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

## Discussion

A. <u>Appropriateness of the Entry of Default Judgment Under the *Eitel* Factors</u>

The merits of plaintiff's substantive claims and the sufficiency of the complaint—factors two and three—weigh in favor of granting default judgment.

Five of the loan agreements provide that claims arising out of the agreements shall be subject to the laws of Texas, while the remaining agreement provides that it is subject to Utah law.  ECF No. 1 at Ex. A ¶ 7.6, Ex. B ¶ 7.6, Ex. C ¶ 7.6, Ex. D ¶ 7.6, Ex. E ¶ 7.6, & Ex. F ¶ 7.6.  A federal court sitting in diversity applies the rules of the state in which it sits.  *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 65 (2013).  In California, "a freely and voluntarily agreed-upon choice of law provision in a contract is enforceable 'if the chosen state has a substantial relationship to the parties or the transaction or any other reasonable basis exists for the parties' choice of law.'"  *1-800-Got Junk? LLC v. Super. Ct.*, 189 Cal. App. 4th 500, 513-14 (2010) (quoting *Trust One Mortg. Corp. v. Invest Am. Mortg. Corp.*, 134 Cal. App. 4th 1302, 1308 (2005)).  There is "a strong policy in favor enforcing such provisions."  *Id*. at 513.

Plaintiff does not address the choice-of-law provisions in each agreement or otherwise specify which states' law should governs its claims.  Consequently, there is nothing in the record suggesting that the parties or the loan agreements have any connection to either Texas or Utah.[2]  Nevertheless, the court need not decide whether Texas, Utah, or California's substantive law should be applied, since these states have nearly identical laws governing breach of contract claims.  *See BMO Harris Bank N.A. v. CHD Trasport Inc.*, No. 1:17-cv-00625-DAD-BAM, 2018 WL 4242355, at *4 (E.D. Cal. Sept. 6, 2018) ("It is not necessary to decide whether California or Texas's substantive law governs, however, because the Court is aware of no relevant differences between the states' laws governing breach of contract claims."); *BMO Harris Bank N.A. v. BKSG*

---

[2] Plaintiff is a national banking association based in Chicago, Illinois, while both defendants are California citizens.  ECF No. 1 at 1-2.

*Transportation LLC*, 1:17-cv-00586-LJO-BAM, 2018 WL 4297854, at *7 (E.D. Cal. Sept. 10, 2018) (findings that there are no relevant differences between California or Utah's substantive law governing breach of contract claims); *BMO Harris Bank N.A. v. Singh*, No. 1:16-cv-00482-DAD-SAB, 2016 WL 5798841, at *6 (E.D. Cal. Oct. 4, 2016) (finding that the elements for a breach of contract are the same under California and Utah law).

To establish a breach of contract claim, a plaintiff must show the existence of a contract, performance by the plaintiff, breach of the contract by defendant, and damages to the plaintiff. *Amelco Elec. v. City of Thousand Oaks*, 27 Cal. 4th 228, 243 (2002); *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App. 2005); *Pierucci v. Pierucci*, 2014 UT App 163, ¶ 11, 331 P.3d 7, 12. As set forth above, plaintiff alleges that GECCI and GECC loaned Greenway money to purchase the collateral in exchange for Greenway's agreement to repay the loans. Greenway also granted GECCI and GECC first-priority security interests in the collateral, and Dhaliwal guaranteed Greenway's full performance of the loan agreements. Defendants defaulted on their obligations and continue to owe plaintiff the amount due under the loan agreements. These allegations, accepted as true, are sufficient to establish that plaintiff is likely to succeed on its breach of contract claims against defendants. Accordingly, the second and third factors weigh in favor of granting default judgment.

The remaining *Eitel* factors also weigh in favor of granting default judgment. Defendants were properly served, *see* ECF Nos. 27, 28, & 32, but have not responded to the complaint. Thus, it appears that their default was not the result of excusable neglect. Moreover, the damages sought are based on the harm allegedly caused by defendants' conduct and, accepting plaintiff's allegations as true, there is little possibility of a dispute concerning material facts. *See Elektra Entm't Grp. Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."). Additionally, because defendants have not appeared in this action, plaintiff has no recourse for obtaining relief absent default judgment. Finally, although decisions on the merits are favored, such a decision is impossible where the defendant declines to take part in the action. *See Penpower Tech. Ltd. v. S.P.C. Tech.*, 627 F.

5

1  Supp. 2d 1083, 1093 (N.D. Cal. 2008).  Accordingly, plaintiff is entitled to default judgment on
2  its breach of contract claims.

3       B.     Damages

4  Plaintiff requests that be awarded damages in the amount of $299,001.25, plus interest
5  accruing from May 13, 2022, the date it filed its motion.  ECF No. 37-1 at 9-13.  Having
6  thoroughly reviewed plaintiff's supporting declarations and business records, I find that plaintiff's
7  damages are somewhat less than the requested amount.

8  Each of the loan agreements provides that in the event of default, the lender may
9  accelerate the amount due and require the borrower immediately to satisfy the outstanding
10 balance.  ECF No. 1 at Ex. A ¶¶ 5.1-5.3, Ex. B ¶¶ 5.1-5.3; Ex. C ¶¶ 5.1-5.3; Ex. D ¶¶ 5.1-5.3; Ex.
11 E ¶¶ 5.1-5.3; and Ex. F at ¶¶ 5.1-5.3.  The agreements further provide that plaintiff is entitled to
12 take possession and dispose of the collateral, and to recover any related expenses, included
13 attorneys' fees, that it incurs.  *Id*.

14 In early July 2019, defendants defaulted on their obligations, and on November 4, 2019,
15 plaintiff elected to accelerate the balance due under the agreements.  ECF No. 1 ¶ 7; ECF No. 37-
16 1 at 16-21.  At the time of acceleration, the amount due under each of the agreements—including
17 principal, unpaid interest, and late fees—was as follows:

18         First Agreement (No. 25001): $10,037.44;
19         Second Agreement (No. 1001): $29,662.15;
20         Third Agreement (No. 5001): $123,462.40;
21         Fourth Agreement (No. 3001): $65,482.75;
22         Fifth Agreement (No. 3002): $65,427.25; and
23         Sixth Agreement (No. 9001): $35,883.22.
24 ECF No. 37-1 at 16-21.  Pursuant to the terms of the loan agreements, upon acceleration
25 defendants are obligated pay interest on all unpaid amounts at a rate of eighteen percent per
26 annum.

27 Subsequent to commencing this case, plaintiff recovered possession the collateral for each
28 loan agreement, which it sold "in a commercially reasonable manner in conformity with

6

reasonable commercial practices among dealers in the type of property that was the subject of the disposition." ECF No. 37-1 at 8. With respect to the first loan agreement, plaintiff incurred $1,015 in expenses related to repossessing and selling the collateral, which was sold for $25,960 on March 11, 2021. ECF No. 37-1 at 16. On that date, the total amount owed under the agreement—including principal, late fees, accrued default interest, and collection costs—was $13,292.64, leaving a surplus of $12,667.36.[3]

As for the remaining five agreements, the amount owed as of May 13, 2022, after applying the proceeds from the sale of collateral and accounting for outstanding accrued interest, late fees, and cost of repossession, was as follows:

        Second Agreement (No. 1001 ): $22,759.06[4];

        Third Agreement (No. 5001): $115,694.61;

        Fourth Agreement (No. 3001): $66,767.53;

        Fifth Agreement (No. 3002): $78,230.15; and

        Sixth Agreement (No. 9001): $5,870.52

---

[3] Notwithstanding this surplus, plaintiff argues that $8,572.13 remains due under the first agreement as of May 13, 2022. Plaintiff explains that "following the application of the net proceeds of the sale of the First Agreement Collateral, not including attorneys' fees and expenses or cost of collection, there was a surplus of $12,667.36 under the First Agreement." ECF No. 37-1 at 11. It contends that after applying the surplus to the $21,239.49 unpaid attorneys' fees and expenses in enforcing the agreements, $8,572.13 remains due under the first agreement. *Id*.
Applying the surplus to reduce the amount of attorneys' fees and costs is not appropriate in this case. As a threshold matter, plaintiff provides no explanation for why the total amount of attorneys' fees and costs should be attributed solely to the first contract. It also does not explain why the surplus should be credited to reduce fees and costs as opposed to the outstanding amount due on the remaining five loan agreements. More fundamentally, applying the surplus to reduce attorneys' fees and costs is simply not feasible for at least two reasons: First, plaintiff does not describe how it obtained the $21,239.49 figure; its motion for default judgment argues that fees and costs total $25,462.74. Second, plaintiff has failed to demonstrate that it reasonably incurred fees and costs in excess of $20,000, as is discussed further below.

[4] For the second sale agreement, plaintiff's business records reflect a total amount due of $23,866.31, consisting of $18,164.58 in principal; $4,594.28 in unpaid interest accrued from the date the collateral was sold; and $1,107 in attorney's fees and costs. Although the sale agreement allows for the recovery of reasonable attorneys' fees and costs, plaintiff has not provided any information concerning this expense. Accordingly, plaintiff has not demonstrated that the $1,107.25 is recoverable under the sales agreement.

After deduction the $12,667.36 surplus from the sale of collateral for the first agreement, plaintiff's total damages are $276,654.51 ($289,321.87 - $12,667.36 = $276,654.51), plus interest accruing at a *per diem* rate $119.91[5] from May 13, 2022, through the date judgment is entered.

### C.  Attorney's Fees and Costs

Plaintiff's motion requests attorneys' fees in the amount of $23,961, plus $2,751 in costs. At the hearing on plaintiff's motion, I notified counsel that there were multiple issues with the submitted billing records, which included several entries for time spent on duplicative and unnecessary tasks. Plaintiff was granted an opportunity to provide supplemental records, which it has since submitted. ECF Nos. 42, 43, & 43. The revised billing records reflect that plaintiff no longer seeks compensation for certain entries related to the initial, and ultimately unsuccessful, attempt to serve defendants and the preparation of plaintiff's renewed motion for default judgment. ECF Nos. 43 & 44. After these adjustments, plaintiff now seeks $20,939 in attorneys' fees based on 75.8 hours of work performed by counsel. Despite the omission of some of the entries, certain deficiencies remain.

To determine the reasonableness of attorney's fees, the court utilizes the lodestar method. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). Under that method, "a district court must start by determining how many hours were reasonably expended on the litigation, and then multiply those hours by the prevailing local rate for an attorney of the skill required to perform the litigation." *Id*. "[E]xcessive, redundant, or otherwise unnecessary" hours should be excluded from a fee award, and charges that are not properly billable to a client are not properly billable to one's adversary. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

Plaintiff seeks fees for work performed by attorneys Aaron Chapin, Christopher Miles, and Jonathan Golding, and paralegals Susan Williams and Anne Arundel. But plaintiff's motion and supporting declarations do not specify the hourly rate sought for each individual. Instead, plaintiff essentially leaves it to the court to discern the hourly rate sought for each person from

---

[5] This *per diem* rate is calculated from the eighteen percent default rate, which is based on a 360-day year, and the $239,814.11 in total principal due under the second, third, fourth, fifth, and sixth loan agreements. ECF No. 37-1 at 17-21; *see* ECF No. 1 Exs. A-F.

counsel's billing records, which include the time spent and total amount billed for each task.[6] Plaintiff also makes no attempt to show that the various hourly rates sought are line with the prevailing rate for work performed in the Sacramento Division of this district by individuals with similar experience. *See Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984) (holding that the fee applicant bears the burden of producing satisfactory evidence that the requested rates are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation"); *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010) ("Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits."); E.D. L.R. 293(b) (requiring motions for attorneys' fees to address, among other things, "the customary fee charged in matters of the type involved").

Plaintiff has also failed to demonstrate that the 75.8 hours of time counsel spent on this case was reasonable. As a threshold matter, the time spent, and resulting $20,939 sought, appear excessive in comparison to other fee awards obtained by plaintiff and its counsel. *See CHD Trasport Inc.*, 2018 WL 4242355 at * 7 (granting plaintiff's counsel $4,703.50 in attorney's fees and costs in connection with a motion seeking default judgment for breach of sales agreements); *BKSG Transportation LLC*, 2018 WL 4297854 at *9-10 (findings plaintiff's counsel reasonably spent 17 hours litigating a case through default judgment and awarding attorneys' fees in the amount of $5,144.50); *Singh*, 2016 WL 5798841 at *14-15 (granting plaintiff's motion for default judgment and awarding $5,556.50 in fees for 20.8 hours of work). Plaintiff does not address the discrepancy between the amount sought in this case and awards obtained in similar actions. But counsel's billing records suggest that the discrepancy might result from excessive time devoted by counsel to attempting service on defendants.

The revised billing records contain at least ninety entries reflecting that counsel spent more than 22 hours—equating to more than $6,700 in attorney's fees—on tasks related to serving defendants. *See generally* ECF No. 43. Plaintiff, however, makes no attempt to explain why counsel was required to devote such a significant amount of time to effecting service. Notably, it

---

[6] While performing that task is not arduous, I decline to do so given the deficiencies with plaintiff's request for fees and costs.

9

appears that defendants' address is easily obtainable from the California Secretary of State's website. Consequently, plaintiff has not established his right to fees for most of the time spent on service-related issues. *See Hensley*, 461 U.S. at 437 ("A fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended . . . .").

As for the remaining entries, a significant number reflect time spent on tasks that are not reimbursable. For example, counsel spent several hours sending emails and participating in calls "re status," "re entry of default," or "re default." *See Coos Bay RV Invs., LLC v. Wheelhaus Inc.*, No. 3:21-CV-00448-AC, 2022 WL 508818, at *6 (D. Or. Feb. 3, 2022) (eliminating time billed for following up on service issues and "emails re: service and related issues"); *Gauchat-Hargis v. Forest River, Inc.*, 2013 WL 4828594 at *3 (E.D. Cal. Sept. 9, 2013) ("[M]any courts . . . reduced fee awards for time spent in 'interoffice conferences' or other internal communications."). The record also reflects that counsel seeks compensation for providing numerous updates to the client and for performing clerical tasks. *See James v. City & County of Honolulu*, No. 13–00397-JMS–BMK, 2014 WL 6908313, at *10 (D. Haw. Dec. 8, 2014) (observing that "[s]ome client communications may be considered clerical or ministerial, such as merely informing the client that a document has been filed or what a hearing date is . . . ."); *Kirk v. Berryhill*, 244 F. Supp. 3d 1077, 1084 (E.D. Cal. 2017) ("[D]rafting letters and preparing documents related to representation and service of process . . . could have been completed by experienced support staff.").

In light of these deficiencies, I recommend that plaintiff's request for attorneys' fees and costs be denied without prejudice

Accordingly, it is hereby RECOMMENDED that:

1. Plaintiff's motion for default judgment, ECF No. 37, be granted in part.

2. The court enter judgment against defendants in the amount of $276,654.51, plus interest accruing at a rate of *per diem* rate $119.91 *per diem* from a May 13, 2022, through the date judgment is entered.

3. Plaintiff's request for attorneys' fees and costs be denied without prejudice to renewal to a timely motion brought under Local Rule 292 and 293.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: \_\_\_March 16, 2023\_\_\_

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE

11